# WHEELING.

## SANDS *v.* BEARDSLEY.

(ENGLISH, JUDGE, absent.)

Submitted June 15, 1889.—Decided June 28, 1889.

1. NOTICE—RECORDATION.

A., having the equitable title to real estate, executed a trust-deed thereon to secure a debt to B., and said deed was duly recorded. Subsequently A. sold the property to C., and by direction of A. the holder of the legal title conveyed the same by deed directly to C., who, after his deed had been recorded, executed a trust-deed upon the real estate to secure a debt to D. *Held:* The

recordation of said trust-deed to secure a debt to B. did not op-
erate as constructive notice to D., and the lien of D. will have
priority over that of B., unless B. shows, that D. had actual no-
tice of the existence of his deed at the time D. acquired his lien.

2. ISSUE OUT OF CHANCERY—REVERSAL OF DECREE.

A chancellor should not direct an issue out of chancery, until
the plaintiff has thrown the burden of proof upon the defendant.
Therefore, where there is a direct conflict between two witnesses,
the one affirming and the other denying the fact to be proved,
no issue should be directed ; and if one is directed, upon which
the jury render an affirmative verdict, and a decree is made ac-
cordingly, the appellate court will reverse the decree, because the
issue was improperly ordered.

*Harvey, Vinson & McDonald* for appellant, William Biggs.

*Simms & Enslow* for appellees.

SNYDER, PRESIDENT :

The Central Land Company being the owner of lot 14,
block 95, in the city of Huntington, Cabell county, sold and
conveyed the same to J. H. Russell and M. E. Miller by deed
dated in 1871, which deed was duly recorded in said county.
In 1879, Russell and Miller by an executory contract, which
was never recorded, sold said lot to Mary M. Wilson and D.
M. Magann, who took possession and built a mill upon it
designated in the record as "Biggs's Mill." By deed dated
May 19, 1880, Wilson and Magann conveyed their equitable
title to said property to J. N. Potts, trustee, to secure a note
executed by them to Margaret Sands, which deed was duly
recorded May 24, 1880. Soon thereafter Wilson and Ma-
gann by title-bond, which was never recorded, sold their in-
terest in said lot to W. B. Wilson, who was placed in pos-
session of it; and he by deed dated March 14, 1881, con-
veyed his equitable interest therein to J. H. Cammack, trus-
tee, to secure a note executed by him to Mary M. Wilson for
$325.00, which note was assigned to and is now owned by
George Sampson. This trust-deed was recorded in Cabell
county on May 19, 1882. Afterwards the said Russell and
Miller by direction of the aforesaid Mary M. Wilson and D.
M. Magann conveyed the legal title of said lot directly to
said W. B. Wilson by deed dated January 24, 1882, but which
was not recorded until June 1, 1882. By deed dated Febru-

ary 9, 1883, which was duly recorded on March 15, 1883, said Wilson and wife conveyed the one moiety of said property to A. J. Beardsley; and subsequently Wilson and Beardsley executed two trust-deeds on the property to secure debts due to William Biggs, the first dated February 9, 1883, and recorded February 26, 1883, to H. C. Simms, trustee, and the other to W. T. Thompson, trustee, dated July 13, 1883, and recorded November 30, 1883. The said Wilson and Beardsley having failed in business, they on December 9, 1884, executed to W. T. Thompson, trustee, a general assignment upon all their property, including the aforesaid mill-property. By direction of Biggs the trustee in the aforesaid trust-deed of July 13, 1883, W. T. Thompson advertised the said mill-property for sale; and thereupon Margaret Sands on January 31, 1885, filed her bill in the Circuit Court of Cabell county against said Wilson and Beardsley, Thompson, trustee, Biggs, and others, claiming that by virtue of the aforesaid trust-deed of May 19, 1880, to secure the debt due her she had a prior lien on said mill-property, and praying that the sale thereof be enjoined, until the validity of her lien could be adjudicated.

In her bill the plaintiff sets forth the above facts and avers, that the defendant Biggs, had constructive as well as actual notice of the existence of her said trust-deed, before and at the time the two trust-deeds aforesaid were executed to secure him. Biggs answered denying, that he had actual notice of the plaintiff's trust-deed, or that the recordation of her deed was constructive notice to him. He also denied, that he had either constructive or actual notice of the trust-deed to secure the debt held by George Sampson.

Upon the question of whether or not Biggs had actual notice of the plaintiff's trust-deed, the Circuit Court directed an issue out of chancery to be tried by a jury submitting two inquiries: *First,* whether or not Biggs had notice or knowledge of the plaintiff's trust-deed before the deed of February 9, 1883, to Simms was executed to secure said Biggs; and, *second,* whether or not Biggs had actual notice or knowledge of the plaintiff's trust-deed before the deed of July 13, 1883, to secure him, or before he had advanced all the money secured thereunder. The jury answered the first of these

inquiries in the negative, and the second in the affirmative. The defendant Biggs moved the court to set aside this finding of the jury, because the issue was improvidently awarded, and for other causes, which it is unnecessary to state. But the court overruled said motion and on January 17, 1888, entered a final decree in the cause, in which it decided, that the aforesaid trust-deed to secure the debt held by George Sampson and also the trust-deed to secure the plaintiff were valid and entitled to priority over the trust-deed of July 13, 1883, in favor of Biggs, and decreed accordingly.

It is from this decree that the defendant Biggs has appealed.

The decree of the Circuit Court as to the debt of George Sampson is plainly erroneous. There is no claim, that either Biggs or his trustee had any actual notice of the trust-deed securing this debt. It will be observed from the facts before stated, that this trust-deed was executed by W. B. Wilson on March 14, 1881, before the grantor had acquired any legal or recorded title. The grantor did not obtain the legal title, which was then in Russell and Miller, until it was conveyed to him by them by deed dated January 24, 1882, which was not recorded until June 1, 1882, after the Sampson trust-deed had been recorded. At the time Biggs obtained his trust-deeds, Wilson and Beardsley, his grantors, had the legal title to the property by deed duly recorded subsequent to the recordation of the Sampson trust-deed. Therefore according to our statute Biggs was not affected by the recordation of the Sampson deed, Code 1887; c. 74, s. 10, *Hoult* v. *Donahue*, 21 W. Va. 294.

It is also true, in respect to the trust-deed of Margaret Sands, that it was given by grantors on an equitable title only; and therefore its recordation could not under said statute operate as constructive notice to Biggs as a subsequent purchaser from Wilson and Beardsley, who had a duly-recorded legal title, at the time the Biggs trust-deeds were executed. But in respect to this latter it is alleged by the plaintiff, that Biggs had actual notice or knowledge of the existence of her deed, at the time he obtained his deed. If such is the fact, then the plaintiff's trust-deed being prior in time, whether recorded or not, must be given priority over the subsequent trust-deed of Biggs.

The important question then is : Did Biggs have such actual notice? To solve this question the court below directed an issue to be tried by a jury. The appellant here contends, that this issue was improvidently directed, because, as he insists, the evidence before the chancellor at the time did not warrant it. The law is well settled in this State, that, if the Circuit Court improperly directs an issue, its action will be reviewed and reversed by the appellate court, regardless of the verdict of the jury. Issues are not directed to enable the party to get additional evidence, and therefore, the propriety of directing an issue must depend upon the state of the proofs in the record at the time the order was made. *Anderson* v. *Cranmer*, 11 W. Va. 552 ; *Jarrett* v. *Jarrett*, Id. 384. No issue should be ordered, until the plaintiff has thrown the burden of proof on the defendant. *Beverley* v. *Walden*, 20 Gratt. 147 ; *Vangilder* v. *Hoffman*, 22 W. Va. 1.

On the question now before us William Sands, the husband of the plaintiff, testified, that some time during the summer of 1883 he and the defendant, William Biggs, met on Third avenue in Huntington ; that they walked to the river-bank, and after some conversation " he (Biggs) asked me how the Biggs mill was going to do. I told him she would do well if she had capital. He then asked me whether or not my wife had a mortgage on the property, to wit, Biggs mill. I replied, ' Yes, a small one.' " Then, upon a direct question as to the time of this conversation, he says it was " about April or May, 1883." On the other side William Biggs, the appellant, testified, that he first heard of the Sands trust-deed from his daughter, Mrs. Beardsley, on the night of the 19th of July, 1884, after he had made the last loan to Wilson and Beardsley ; that, at the time he took his last trust-deed, Wilson and Beardsley told him, that his was the first and only lien on the property, but that he did not then nor afterwards until after the assignment examine the records or have them examined to ascertain, if there were any liens on the property. On cross-examination he was asked : " In July, 1883, while you were in the city of Huntington, did not you have a conversation with Wm. Sands, on the bank of the Ohio river, below the C. & O. Ry. depot, in reference to the Sands deed of trust, in which you stated,

that you had loaned money to Wilson and Beardsley, and inquired of Sands, if his wife did not have a lien on the mill-property also, and Sands said, 'Yes, a small one,' or words to that effect?" to which he answered, "No; never had a conversation about it in my life."

This is all the testimony on the subject of notice. It is true, that after Biggs was informed, that the Sands trust-deed was on record at a date prior to his, he urged Wilson and Beardsley to pay it off, and did not until after the assignment of December 9, 1884, question its validity as a prior lien; but this is fully explained by the fact, that, until the record had been examined, and it was disclosed, that the record of the Sands deed did not constitute constructive notice to him, he not being a lawyer and being ignorant of the facts appearing upon the record supposed, that he was bound by the record, simply because the Sands deed had been recorded before his; that is, he, as he might well have done, believed, that he was chargeable with constructive notice of the Sands deed, although he had no actual notice or knowledge of its existence.

This being the state of the evidence, at the time the issue was ordered, it seems to me very clear, that the issue was improperly directed. The burden of proving actual notice to Biggs was upon the plaintiff. To meet this burden she offered but a single witness, who was her husband, and his evidence is directly and positively disputed and contradicted by the defendant. This simple assertion on the one side and denial on the other could not under any rule of testing evidence operate to shift the burden of proof but merely left the burden, as it was before this conflicting evidence had been offered, and consequently under the rule of law before stated, the burden not having been thrown by the plaintiff upon the defendant, the court erred in directing the issue.

For these reasons the said decree of the Circuit Court must be reversed, and the cause remanded for further proceedings in accordance with views expressed in this opinion.

REVERSED.  REMANDED.